IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE LaFOLLETTE, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ROBAL, INC.,

Defendant.

CIVIL ACTION FILE NO.

1:16-CV-02592-WSD-WEJ

# FINAL REPORT AND RECOMMENDATION

Plaintiff, Stephanie LaFollette, on behalf of herself and a putative class, filed this action asserting that defendant, RoBal, Inc., violated the Fair Credit Reporting Act's "stand-alone disclosure requirement," codified at 15 U.S.C. § 1681b(b)(2)(A). Now pending before this Court is Defendant's Motion to Dismiss [4], which argues that the Complaint [1] should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because plaintiff lacks standing to sue under the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). For the reasons stated below, the undersigned agrees and **RECOMMENDS** that Defendant's Motion to Dismiss [4] be **GRANTED**.

## I. ALLEGATIONS OF THE COMPLAINT

On or about November 2015, Ms. LaFollette applied for employment with defendant. (Compl. ¶ 14.) As part of that application, Ms. LaFollette completed RoBal's "Employee Applicant Background Check Authorization/Order Form" (hereafter, the "Form"). (Id. ¶ 15; see also Compl. Ex. D [1-4] (copy of Form).) The Form states that "[t]he undersigned (i) confirms that it [sic] has authorized the above named Client to obtain a background check for employment purposes including, without limitation, a consumer report and criminal background check on the undersigned." (Compl. ¶ 16.) The Form also states in a separate paragraph the following:

> **THE UNDERSIGNED RELEASES AND HOLDS HARMLESS INFORMATION ON DEMAND, INC. AND ITS AGENTS AND REPRESENTATIVES, AND ALL ENTITITES AND INDIVIDUALS INVOLVED IN REPORTING INFORMATION ABOUT THE UNDERSIGNED, FROM ANY AND ALL CLAIMS BY, OR LIABILITY TO, THE UNDERSIGNED THAT MAY RESULT FROM, ARISE OUT OF, OR IN CONNECTION WITH THE CHECK AND CONSENTS TO THE ABOVE NAMED EMPLOYER TO [SIC] PERFORM PERIODIC BACKGROUND CHECKS FOR THE DURATION OF MY EMPLOYMENT WITH THIS COMPANY.**

(Id. ¶ 17 (bold and all capital letters in original).)

The Form states that defendant certifies that it "has provided to the subject of the Background Report a clear and conspicuous written disclosure, in a

document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." (Compl. ¶ 18.) Despite this certification, plaintiff alleges that RoBal never provided her with a document that consists solely of the disclosure that it may obtain a consumer report for employment purposes. (Id. ¶ 19.) On November 25, 2015, defendant obtained plaintiff's consumer report from a consumer reporting agency called Information on Demand. (Id. ¶ 20.) Plaintiff does not claim that she or the putative class suffered any actual damages, but seeks instead statutory damages, costs, and attorneys' fees. (Id. ¶¶ 37-38.)

## II. DISCUSSION

The Fair Credit Reporting Act ("FCRA") provides that a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

The allegations of the Complaint and the Form itself show that: (1) RoBal provided a disclosure to plaintiff that a consumer report may be obtained for employment purposes before procuring one; and (2) plaintiff authorized in writing the procurement of that report. Plaintiff does not allege that the disclosure was misleading or confusing, that she was unaware that a consumer report was being requested, or that RoBal used the consumer report inappropriately. RoBal states, and plaintiff does not dispute, that it hired her after receiving the requested consumer report. (Def.'s Br. [4-1] 3 n.1.)

The Form contains not only the required disclosure, but also what the parties call "extraneous information," such as the release and hold harmless paragraph, quoted supra. Plaintiff contends RoBal violated the FCRA when it failed to place that disclosure in a "document that consists solely of the disclosure." See 15 U.S.C. § 1681b(b)(2)(A)(i). The issue here is whether Ms. LaFollette has Article III standing to pursue her claim that RoBal violated the FCRA's stand-alone disclosure requirement.

Defendant asserts that plaintiff has not identified any information to which she was entitled that she did not receive. Instead, plaintiff complains that the form in which the information was provided violates the FCRA. According to defendant, an alleged technical violation of one of the FCRA's procedural

requirements does not constitute an injury-in-fact that confers standing. Plaintiff responds that, because she was not provided with the statutorily mandated information in the format required, she sustained particularized and concrete harm in the form of an informational injury and an invasion of her privacy, both of which are sufficient for Article III standing.

The parties have submitted well-reasoned briefs containing numerous case citations. Given the many judges who have written extensively on the issue at hand, there is no need for the undersigned to do so here. Instead, the undersigned cites the relevant cases below and reports that the great weight of authority holds that a plaintiff like Ms. LaFollette, who alleges that the disclosure she received from her employer was not in a "document that consists solely of the disclosure," lacks Article III standing. See Boergert v. Kelly Servs., Inc., No. 2:15-CV-04185-NKL, 2016 WL 6693104 (W.D. Mo. Nov. 14, 2016); Gunther v. DSW, Inc., No. 15-C-1461, 2016 WL 6537975 (E.D. Wis. Nov. 3, 2016); Albu v. The Home Depot, Inc., 1:15-CV-00412-ELR (N.D. Ga. Nov. 2, 2016) (R&R by King, M.J.)[1]; Tyus v. United States Postal Serv., No. 15-CV-1467, 2016 WL 6108942

[1] The undersigned relies on Albu because the FCRA disclosure used by that employer was very similar to the one used here. See Albu, 1:15-CV-00412-ELR-

(E.D. Wis. Oct. 19, 2016); Hopkins v. Staffing Network Holdings, LLC, No. 16 C 7907, 2016 WL 6462095 (N.D. Ill. Oct. 18, 2016); Shoots v. iQor Holdings US Inc., No. 15-CV-563 (SRN/SER), 2016 WL 6090723 (D. Minn. Oct. 18, 2016); Nokchan v. Lyft, Inc., No. 15-CV-03008-JCS, 2016 WL 5815287 (N.D. Cal. Oct. 5, 2016); Landrum v. Blackbird Enters., LLC, No. CV H-16-0374, 2016 WL 6075446 (S.D. Tex. Oct. 3, 2016); Fisher v. Enter. Holdings, Inc., No. 4:15CV00372 AGF, 2016 WL 4665899 (E.D. Mo. Sept. 7, 2016); Larroque v. First Advantage LNS Screening Sols., Inc., No. 15-CV-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016); Groshek v. Time Warner Cable, Inc., No. 15-C-157, 2016 WL 4203506 (E.D. Wis. Aug. 9, 2016); Smith v. Ohio State Univ., No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016).

In contrast to these twelve cases, only four cases have found that plaintiffs pursuing violations of the FCRA's stand-alone disclosure requirement had standing. See Graham v. Pyramid Healthcare Sols., Inc., No. 8:16-CV-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016); Moody v. Ascenda USA, Inc., No. 16-CV-60364-WPD, 2016 WL 5900216 (S.D. Fla. Oct. 5, 2016);

---

JFK (R&R [63], at 31). Accordingly, the analysis that Judge King makes there is applicable here.

Meza v. Verizon Commc'ns, Inc., 1:16-CV-0739 AWI MJS, 2016 WL 4721475 (E.D. Cal. Sept. 9, 2016); Thomas v. FTS USA, LLC, No. 3:13-CV-825, 2016 WL 3653878 (E.D. Va. June 30, 2016).

As shown below these cases are either distinguishable on their facts or are unpersuasive. Judge King distinguished Thomas "on its facts because the plaintiff in Thomas did not receive a timely disclosure, did not provide consent, and asserted violations of both §§ 1681b(b)(2)(A) and 1681b(b)(3)(A)." Albu 1:15-CV-00412-ELR-JFK (R&R [63], at 24). In contrast, both the plaintiffs in Albu and Ms. LaFollette received disclosures and provided consent.

Meza is similarly distinguishable because the plaintiff there alleged that the defendant employer violated the FCRA by obtaining a credit report without giving him a written disclosure and without obtaining his written authorization. 2016 WL 4721475, at *2. There is no dispute that RoBal provided a disclosure and obtained an authorization from Ms. LaFollette in the instant case.

The other two cases that support plaintiff's position—Moody and Graham—are unpersuasive because of their misapplication of Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016). In Church, the Eleventh Circuit held that a plaintiff in a Fair Debt Collection Practices Act ("FDCPA") case sustains a concrete informational injury (and thus

has standing) when a defendant fails to provide her with statutorily-mandated information. 2016 WL 3611543, at *3.

Judge King wrote in Albu that Church was distinguishable because "the plaintiff in Church did not receive the required disclosures and was, in fact, deprived of information Congress deemed necessary for the protection of consumers." Albu 1:15-CV-00412-ELR-JFK (R&R [63], at 30.) Because the plaintiffs in Albu received the required disclosures (albeit not in stand-alone documents required by the FCRA), Judge King found that Church did not support those plaintiffs' standing argument. (Id.) Other cases agree with Judge King that Church does not support Article III standing when the employer allegedly violated the FCRA's stand-alone disclosure requirement. See Nokchan, 2016 WL 5815287, at *9; Fisher, 2016 WL 4665899, at *4; Tyus, 2016 WL 6108942, at *6; Hopkins, 2016 WL 6462095, at *3.[2]

---

[2] Although Church has no application, the Eleventh Circuit's more recent opinion in Nicklaw v. CitiMortgage, Inc., 839 F.3d 998 (11th Cir. Oct. 6, 2016), suggests there is no Article III standing here. Having looked at history and Congressional judgment, the court held that the intangible harm caused by delay in recording a certificate of discharge did not constitute a concrete injury despite plaintiff's arguments that the New York legislature intended to create a substantive right to have the certificate of discharge timely recorded and the right to have a satisfaction of mortgage timely recorded has deep roots in American

Given that Church does not apply to cases like this one, Moody and Graham erred in relying upon it. Judge King made that clear with regard to Moody as follows:

> Plaintiffs' Second Amended Complaint in Moody *alleged* (a legal conclusion) that pursuant to Church, "Plaintiffs suffered a concrete informational injury because Defendant failed to provide Plaintiffs with information to which they were entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right–the right to receive the required disclosures as set out in the FCRA–and a new injury–not receiving a stand-alone disclosure." Id., at *3 (quoting Second Amended Complaint, ¶ 77). Effectively, Moody construed the Eleventh Circuit's ruling in Church *to extend* informational standing to include *the form of the information*. Id., at *6 (citing Church, 2016 WL 3611543, at *1). Relying on Church and Thomas, the [Moody] court found Article III standing existed based upon alleged information injury and invasion of privacy. Id., at *5-6 (quoting Thomas, 2016 WL 3653878, at *7). The undersigned is not persuaded that the Moody court's interpretation of Church is in line with Spokeo's teaching or other information standing cases because Church was premised on a

---

common law. Id. at *3. Notwithstanding the tardy filing (approximately 60 days beyond the statutory deadline) and clear violation of statute, the Nicklaw panel found that plaintiff lacked Article III standing since he did not allege that he lost money as a result, did not allege that his credit suffered, and did not allege that he or anyone else knew that the certificate had not been recorded within the statutory period. Id. ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation.") (citing Spokeo, 136 S. Ct. at 1550). In other words, plaintiff did not allege facts showing "that he suffered or could suffer any harm that could constitute a concrete injury." Id. at *4.

> *failure* to provide information. See Church, 2016 WL 3611543, at *3[.]

Albu, 1:15-CV-00412-ELR-JFK (R&R [63], at 31-32) (emphasis in original). The undersigned adopts Judge King's reasoning to reject Moody's application here.

Finally, with regard to Graham, Counts I and II of the amended complaint there alleged, in relevant part, that the disclosure the plaintiff executed to authorize the defendant to obtain a consumer report as part of the employment process failed to comply with the FCRA's stand-alone disclosure requirement. Graham, 2016 WL 6248309, at *1. Relying on its interpretation of the Eleventh Circuit's Church opinion and upon the district court's Moody order, Graham held that the plaintiff had a right to a stand-alone disclosure, that the alleged violation of that right was not a hypothetical or uncertain injury but one Congress elevated to the status of a legally cognizable injury, and that plaintiff had standing. Id. at *3. Graham is on point with the instant case, but the undersigned respectfully declines to follow it, given its erroneous interpretation of Church and its citation to Moody (which made the same error).

The undersigned elects to follow instead the far greater number of cases (cited supra) which held that a plaintiff who receives the required disclosure, but

not in the format required by the FCRA, has not suffered a sufficiently concrete injury to have Article III standing. See Boergert, 2016 WL 6693104, at *3-4. The claim made here by Ms. LaFollette—that the consent form she received did not technically comply with the requirements of the FCRA—is the kind of bare procedural violation that the Supreme Court described as insufficient in Spokeo to confer Article III standing. See, e.g., Shoots, 2016 WL 6090723, at *5; Larroque, 2016 WL 4577257, at *5; Groshek, 2016 WL 4203506, at *2-3; Smith, 2016 WL 3182675, at *4.

In summary, plaintiff fails to identify any injury sufficient to confer Article III standing. The Supreme Court made clear that "a violation of one of the FCRA's procedural requirements may result in no harm," in which case a plaintiff will lack Article III standing. Spokeo, 136 S. Ct. at 1549. If that language is to be given any meaning, it must apply to cases like this one, where the plaintiff challenges only extraneous information in an otherwise clear and conspicuous FCRA form and concedes that the language did not confuse her or alter her informed consent. In making this recommendation, the Court is guided by, and adopts the reasoning of Albu and the other cases cited above which rejected Article III standing in factually identical circumstances.

## III. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [4] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 21st day of November, 2016.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE